STATE ex rel. OKLAHOMA BAR ASS'N

v.

HAMILTON.

No. SCBD 1425.

Supreme Court of Oklahoma.

May 11, 1954.

W. L. Eagleton, Richard H. Wills, Jr., Tulsa, for Oklahoma Bar Ass'n.

A. M. Covington, Tulsa, for Cal Hamilton.

BLACKBIRD, Justice.

This action involves a review by this Court of the proceedings instituted by the Central Committee of the Executive Council of the Oklahoma Bar Association, wherein charges of professional misconduct were filed against Cal Hamilton, a member of the Oklahoma Bar Association from Tulsa County, as provided by the rules creating, controlling and regulating the Oklahoma Bar Association.

The complaint filed against Cal Hamilton, a Tulsa attorney, alleged abuses of professional ethics in connection with his law practice before the Municipal Criminal Court of that City. Grievance Committee 14A reviewed the complaint and an investigation was made by said Committee pursuant to the rules of the Oklahoma Bar Association, and on July 12, 1951, a report of its findings respecting the complaint was made to the Central Committee of the Executive Council of the Oklahoma Bar Association. After due consideration of said report the Central Committee authorized disciplinary proceedings against Hamilton as respondent, and such proceedings were commenced August 8, 1951, before Grievance Committee 14B. The appointment of a prosecutor was made September 17, 1951, and after the trial, on November 26, 1952, in accordance with the rules creating, controlling, and regulating the Bar Association, said Grievance Committee 14B, on February 11, 1953, made the following written report and recommendation to the Central Committee:

"The undersigned members of Grievance Committee, District No. 14–B report as follows in regard to the captioned cause:

"The principal evidence introduced was the transcript of evidence in hearings had before the Municipal Judge of the City of Tulsa, Oklahoma, in connection with an investigation of shortage of funds in the office of the Municipal Court Clerk.

\* \* \* \* \* \*

"The charges, although six in number, fell into three classes, to-wit:

"(1) That respondent had either solicited employment or that others had solicited employment in his behalf.

"(2) That respondent had accepted funds from his clients for the purpose of the payment of fines and court costs adjudged against them and had not properly accounted for the same.

"(3) That respondent had entered unauthorized pleas of guilty on behalf of his clients.

"It was stipulated by the prosecution that there was no contention that the Respondent had embezzled any moneys or that he had converted moneys paid him to his own use and benefit. The Respondent was tried in the District Court of Tulsa County on one charge of embezzlement growing out of a transaction set forth in the complaint and was acquitted by the jury.

"Upon review of the evidence, we are of the opinion that the evidence does not sustain the charge that Respondent solicited business.

"We are of the opinion that the evidence does sustain the charge that Respondent received moneys from his clients for the purpose of payment of fines and costs adjudged against them and instead of seeing to it that the money was so applied, he paid the same to professional bondsmen in the case. The seriousness of this offense is mitigated to some extent by the fact that the evidence disclosed a custom in the office of

the Municipal Clerk whereby cash bonds would not be refunded to the bondsmen without the deduction of the fine and costs, and it was somewhat customary for attorneys to pay fine and cost money to Bondsmen who would then receive from the Clerk the balance of the bond which they had posted. The evidence revealed that this practice was encouraged by the Court Clerk's office to simplify the bookkeeping.

"Respondent admitted that upon one or perhaps two occasions he had entered unauthorized pleas of guilty for his clients but he contended that he had a large volume of police court criminal cases and that these pleas of guilty were simply entered by error and were rectified upon his learning of his mistake. There was evidence that during the period of time involved respondent handled from 40 to 70% of criminal cases coming before the court in which an attorney was employed.

"We feel that even though it was customary for attorneys to pay fine and cost money to bondsmen in cases of this kind, that such conduct is not in keeping with an attorney's responsibilites, especially where he has assumed the responsibility of applying such moneys to the payment of fine and costs by accepting same from the client. We feel that he owes a duty to his client in such cases to personally see to it that the fine and costs are properly applied rather than to leave such function to be performed by another.

"However, because such was the established practice and since in so acting Respondent had no criminal intent, we feel that a reprimand is sufficient punishment in this case. Consequently, we recommend to you that the Respondent be reprimanded."

Thereafter, on March 11, 1953, the Central Committee, having reviewed and considered the above report, approved it as to the finding of guilt and the recommendation of reprimand. However, being of the opinion that the evidence (a complete memorandum of which was attached to the report of the investigation made by said Grievance Committee) was sufficient to support all of the charges against the respondent, and that a reprimand was not sufficient punishment, the Central Committee made the further recommendation that said respondent be suspended from the practice of law for a period of six months from the date of final action by this Court.

A transcript of all proceedings and evidence taken, together with the reports of the various committees and the reports and recommendation of the Central Committee of the Oklahoma Bar Association has been filed in this Court.

An examination of the record discloses, first, that the charges, although six in number, fell into three classes:

"(1) That respondent had either solicited employment or that others had solicited employment in his behalf.

"(2) That respondent had accepted funds from his clients for the purpose of the payment of fines and court costs adjudged against them and had not properly accounted for the same.

"(3) That respondent had entered unauthorized pleas of guilty on behalf of his clients."

Upon review of the evidence we do not think it supports the conclusion that respondent solicited business. We believe the hereinbefore quoted stipulation clears up the question of embezzlement.

Then there is the charge of the respondent's receiving money from clients for the purpose of paying fines and costs adjudged against them, and instead of seeing to it that the money was so applied, he paid same to a professional bondsman. This, we consider, is the most serious charge and although the evidence tends to support it nevertheless we believe its seriousness is mitigated to some extent by the circumstances as related in the report of the Grievance Committee 14B.

The question of entering unauthorized pleas of guilty cannot be condoned, but we believe there is a fair explanation covering such charge. However, upon the theory

that respondent will be more careful in the handling of such matters in the future, we feel that a proper reprimand for his carelessness will constitute sufficient punishment at the present time.

The recommendation of the Bar Association that the respondent be suspended from practicing law is therefore disapproved, but its recommendation that he be reprimanded for his unprofessional conduct is approved.

HALLEY, C. J., and CORN, DAVISON, ARNOLD, O'NEAL and WILLIAMS, JJ., concur.